UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 15-CV-6182 (JFB)(AYS)
_____

MIKAEL MIKAELIAN, ET AL.,

Plaintiffs,

VERSUS

LIBERTY MUTUAL INSURANCE,

Defendant.
_____

**MEMORANDUM AND ORDER**
September 8, 2016
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs, Mikael Mikaelian and Horoutun ("Harry") Mikaelian (collectively, "plaintiffs"), bring this action alleging breach of contract, bad faith, fraudulent investigation, and negligent misrepresentation by defendant LM Insurance Corporation, sued herein as Liberty Mutual Insurance ("defendant" or "Liberty"). Plaintiffs also seek a declaratory judgment and specific performance.

Defendant now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' Complaint. For the reasons set forth herein, the Court grants defendant's motion in its entirety.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the Complaint ("Compl."). The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiffs, the non-moving party.

Plaintiffs allege that, in October 2012, Harry Mikaelian purchased and renovated the residential property located at 26310 East Williston Avenue, Floral Park, New York 11001 (the "Premises"). (Compl. ¶ 6.) Plaintiffs further allege that, on October 19, 2012, Harry Mikaelian's father, Mikael Mikaelian, purchased a homeowner's insurance policy (the "Policy") from defendant to insure the Premises, which he renewed through October 19, 2016. (Compl. ¶ 7.) Plaintiffs allege that, at all relevant times, Harry Mikaelian has resided at the Premises, whereas Mikael Mikaelian has resided at 85-05 213th Street, Queens Village, New York 11427. (Compl. ¶¶ 2-3.)

Plaintiffs allege that, in July 2013, Harry Mikaelian installed an air conditioner and exhaust fan in the roof above the Premises' attic. (Compl. ¶ 9.) Plaintiffs allege that, "[o]ver the last year," Harry Mikaelian "noticed a musty smell and moist room

conditions within certain areas of the Premises," which worsened as time progressed, prompting him to hire Leighton Associates Inc. ("Leighton"), environmental health and safety consultants, to conduct an initial mold evaluation of the Premises on July 7, 2015. (Compl. ¶ 10.) Plaintiffs allege that, after taking air and surface samples of the Premises, Leighton concluded that there was extensive mold growth in the Premises and, thus, recommended mold remediation. (Compl. ¶¶ 11-12.)

On or about July 14, 2015, Harry Mikaelian submitted a formal claim for coverage under his Policy with defendant. (Compl. ¶ 13.) On July 23, 2015, James Ruiz, an adjuster in defendant's Homeower Claims Department sent Harry Mikaelian a letter informing him that an investigation of his claim for damages due to "Constant/Repeated Seepage/Leak" had been commenced. (Compl. ¶ 14.) Plaintiffs allege that, on July 28, 2015, after reviewing Leighton's recommendations for mold removal and remediation, Harry Mikaelian hired an independent third-party contractor, Bayside Contracting, Inc. ("Bayside"), to provide an estimate of costs for mold removal. (Compl. ¶ 15.) Plaintiffs further allege that, also on July 28, 2015, defendant hired H2M Architects & Engineers ("H2M") to inspect the Premises on defendant's behalf. (Compl. ¶ 16.) On August 4, 2015, H2M sent an inspection report to Harry Mikaelian, which determined that, based upon mold air sampling, mold remediation was not required within the Premises. (Compl. ¶ 17.) Plaintiffs allege that, upon receiving this notice, they were concerned that defendant would not provide coverage for mold remediation under the Policy and, therefore, emailed Ruiz to request a follow-up inspection by H2M. (Compl. ¶ 18.)

On August 13, 2015, plaintiffs allege that Ruiz informed Harry Mikaelian that it was defendant's position that mold remediation was not necessary and, therefore, would not be covered under the policy. (Compl. ¶ 19.)[1] Plaintiffs allege that, on August 14, 2015, Leighton emailed Harry Mikaelian, opining that H2M and Leighton had conflicting reports on the need for mold remediation because H2M based its analysis and conclusion on information provided by defendant and defendant did not provide H2M with a full copy of Leighton's lab report. (Compl. ¶¶ 20-21.) Plaintiffs then demanded a second inspection by defendant, claiming that H2M's inspection was inaccurate. (Compl. ¶ 22.) On August 17, 2015, Harry Mikaelian emailed defendant to inform it that, after H2M completed the follow-up inspection scheduled for August 25, 2015, he planned to commence mold remediation based on concern of health issues to himself, his wife, and their unborn child. (Compl. ¶ 23.) Plaintiffs allege that, in reply, defendant reaffirmed that the Policy did not cover the mold remediation and that

---

[1] In its memorandum in support of its motion to dismiss, defendant argues that plaintiffs mischaracterize Ruiz's response to Harry Mikaelian. Specifically, defendant points to a copy of the email exchange between Harry Mikaelian and Ruiz, in which, on August 13, 2015, Ruiz states "based on the inspection there is currently no need for mold remediation to your home," but that Liberty felt it necessary for H2M to return to the Premises and inspect the ceiling to try to resolve the discrepancy between the reports. (Ex. F to Compl., ECF No. 1-2, at 64.) Defendant further points to an August 17, 2015 email from Ruiz, stating "[a]s previously stated, no coverage determination has been made at this time. Once we received (sic) H2M's final report we will evaluate your claim accordingly" (Ex. H to Compl., ECF No. 1-2, at 71), to support its argument that Ruiz did not inform plaintiffs on August 13, 2015, that remediation would not be covered under the policy. Although, for purposes of the instant motion, the Court construes the allegations in favor of plaintiffs, this discrepancy between the allegations in the Complaint and the emails attached to the Complaint does not impact the Court's analysis.

it based this decision on H2M's report. (Compl. ¶ 24.)

Plaintiffs allege that Harry Mikaelian determined that he could not wait for the second inspection due to the health concerns and hired Bayside to perform the necessary mold remediation, which was completed on or before August 24, 2015. (Compl. ¶ 25.) Plaintiff Harry Mikaelian and his family stayed in a hotel during the remediation, and on August 25, 2015, Leighton re-inspected the Premises and determined it was safe for occupancy. (Compl. ¶¶ 26-27.)

B. Procedural Background

Plaintiffs filed their Complaint in the Supreme Court of the State of New York, County of Queens, on September 22, 2015. Defendant removed the action to this Court on October 28, 2015. On January 6, 2016, defendant moved to dismiss. Plaintiffs filed their opposition on January 15, 2016, and defendant filed its reply on February 22, 2016. The Court held oral argument on March 16, 2016. The matter is fully briefed, and the Court has considered all of the parties' submissions.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and

3

(5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

## III. DISCUSSION

Defendant moves to dismiss, arguing that the breach of contract claim should be dismissed because the loss is not covered by the Policy for the following reasons: (1) Harry Mikaelian is not an insured under the Policy; (2) Mikael Mikaelian does not have an insurable interest in the Premises; and (3) the Policy does not cover loss caused by mold or seepage/leakage of water occurring over an extended period. Defendant further argues that plaintiffs' claim for bad faith should be dismissed because New York law does not recognize an independent claim for relief based upon an insurer's denial of liability coverage, and also argues that plaintiffs fail to state a claim for fraudulent inducement or negligent misrepresentation. In the alternative, defendant argues that such claims should be dismissed as duplicative of plaintiffs' breach of contract claim. Finally, defendant argues that plaintiffs' causes of action for a declaratory judgment and specific performance should be dismissed because plaintiffs have an adequate remedy at law.

### 1. Breach of Contract

Defendant argues that plaintiffs' breach of contract claim should be dismissed because (1) Harry Mikaelian is not an insured under the Policy; (2) Mikael Mikaelian does not have an insurable interest in the Premises; and (3) the Policy does not cover the alleged loss.

"Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation." *In re Estates of Covert*, 761 N.E.2d 571, 576 (N.Y. 2001); *see also Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, -- F. Supp. 3d --, No. 10 CIV. 9371 (KPF), 2015 WL 1914319, at *7 (S.D.N.Y. Apr. 28, 2015), *aff'd sub nom. Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, -- F. App'x --, No. 15-1717, 2016 WL 3006869 (2d Cir. May 25, 2016). Accordingly, "contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." *In re Estates of Covert*, 761 N.E.2d at 576 (internal quotation marks, alteration, and citations omitted); *see also White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007) ("As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning."); *Mongelli v. Chicago Ins. Co.*, No. 99 CV 8149 (SJ), 2002 WL 32096578, at *3 (E.D.N.Y. Jan. 15, 2002) ("'Although any ambiguities must be resolved in favor of the insured, where the provisions of an insurance contract are clear and unambiguous, they must be enforced as written.'" (quoting *Hartford Ins. Co. of the Midwest v. Halt*, 646 N.Y.S.2d 589, 594 (App. Div. 1996))).

"The party claiming insurance coverage bears the burden of proving entitlement."

4

*Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 824 N.Y.S.2d 230, 232 (App. Div. 2006); *see also Kidalso Gas Corp. v. Lancer Ins. Co.*, 802 N.Y.S.2d 9, 10 (App. Div. 2005) ("It is basic that it is the insured which has the burden of showing that the insurance contract covers the loss for which the claim is made."); *Gongolewski v. Travelers Ins. Co.*, 675 N.Y.S.2d 299 (App. Div. 1998) ("An insured seeking to recover for a loss under an insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy." (internal quotation marks and citations omitted)).

    a.  Harry Mikaelian

Defendant argues that the breach of contract claim should be dismissed with respect to Harry Mikaelian because he is not an insured on the Policy. It is undisputed (as set forth in the Complaint) that Harry Mikaelian does not appear on the face of the policy. However, plaintiffs argue that he is still entitled to coverage under the policy because he resides at the Premises and, thus, qualifies as an additional insured.

Under New York law, it is well-settled that a party that is not named either as an insured or additional insured on the face of the insurance policy is not entitled to coverage. *See, e.g.*, *New York State Thruway Auth. v. Ketco, Inc.*, 990 N.Y.S.2d 72, 74 (App. Div. 2014) ("[A] party is not entitled to coverage if it is not named as an insured or additional insured on the face of the policy as of the date of the accident for which coverage is sought."); *Nat'l Abatement Corp.*, 824 N.Y.S.2d at 232 (noting that a party is "not entitled to coverage if not named as an insured or an additional insured on the face of the policy").

It is undisputed that, during the relevant time period, Mikael Mikaelian was the named insured under the Policy. (*See* Compl. ¶ 8, Ex. A at 3.) The Policy defines "insured" as "you (the "named insured") and residents of your household who are: a. Your relatives; or b. Other persons under the age of 21 and in the care of any person named above." (Policy, Ex. B to De Funis Decl., at 6.) Although Harry Mikaelian is Mikael Mikaelian's son and, thus, qualifies as his relative, plaintiffs have acknowledged that they do not live in the same household. Instead, plaintiffs have alleged that Harry resides at the Premises – 263-10 East Williston Avenue, Floral Park, New York – whereas Mikael resides at 85-05 213th Street, Queens Village, New York. (Compl. ¶¶ 2-3.) Thus, because Harry does not reside in the same household as his father, he is not entitled to insurance coverage under the terms of the Policy. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Gutstein*, 599 N.E.2d 672, 672 (N.Y. 1992) (holding son was not covered under his father's insurance policy where son maintained his own apartment where he resided more than 80% of the time, and policy provided coverage only for a "family member," defined in the policy as "a person related to [the insured] by blood, marriage or adoption who is a resident of [the insured's] household"); *State Farm Mut. Auto. Ins. Co. v. Bonifacio*, 892 N.Y.S.2d 555, 556 (App. Div. 2010) (finding daughter was not a covered person under her parents' insurance policy where she had established legal residence in Manhattan and had lived there in her own apartment for more than two years before her accident, even though she listed parents' address on her driver's license, kept a room there, and possessed a key to the home); *see also State Farm Mut. Auto. Ins. Co. v. Nicoletti*, 784 N.Y.S.2d 128, 129 (App. Div. 2004) ("Whether a person is a 'resident' of an insured's 'household' requires something more than temporary or physical presence and requires at least some degree of permanence and intention to remain." (internal quotation marks and citations

omitted) (collecting cases)).

Although plaintiffs argue that Harry Mikaelian was covered by the policy because the policy "covers additional 'insureds,' which includes any relatives of the policyholder residing in the covered property" (Pls.' Opp'n at 5), that is plainly not how "insured" is defined in the Policy. Instead, as discussed *supra*, the Policy clearly defines "insured" as the named insured or "residents of [the named insured's] household" who are either relatives or under twenty-one years old and in the care of the insured. (Policy, Ex. B to De Funis Decl., at 6.) Thus, because it is undisputed (as set forth in the Complaint) that Harry Mikaelian did not live with his father, and therefore, was not a member of his father's household, he is not covered by the terms of the Policy and does not have a cognizable breach of contract claim.

b. Mikael Mikaelian

Defendant argues that the breach of contract claim should be dismissed with respect to Mikael Mikaelian because he has no insurable interest in the Premises.

Although plaintiffs allege that Mikael Mikaelian purchased the Policy, the Complaint clearly states that Harry Mikaelian purchased the Premises. (Compl. ¶¶ 6-7.) The Complaint does not allege that Mikael has any connection to the Premises apart from his purchase of the Policy. Plaintiffs do not dispute this, but rather argue that Mikael need not have a legal or equitable interest in the property to have an insurable interest. (Pls.' Opp'n at 5-6.)

New York Insurance Law Section 3401 provides that:

> No contract or policy of insurance on property made or issued in this state, or made or issued upon any property in this state, shall be enforceable except for the benefit of some person having an insurable interest in the property insured. In this article, "insurable interest" shall include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage.

N.Y. Ins. Law § 3401; *see also Azzato v. Allstate Ins. Co.*, 951 N.Y.S.2d 726, 733 (App. Div. 2012) ("It has long been the rule that, in order to prevent fraud and crime and to prohibit wagering contracts on property in which the insured possesses no interest, the lack of an insurable interest in the property insured renders the property insurance void and unenforceable. Thus, the law of this State requires that the named insured have an insurable interest in the subject matter of the policy of insurance." (internal quotation marks, alteration and citation omitted)).

New York courts have noted that "a legal or equitable interest in the property insured is not necessary to support an insurable interest. Rather, a person has an insurable interest in a property whenever he or she would profit by or gain some advantage from the property's continued existence or suffer some loss or disadvantage by its destruction." *Azzato*, 951 N.Y.S.2d at 733 (internal quotation marks and citations omitted); *see also Scarola v. Ins. Co. of N. Am.*, 292 N.E.2d 776, 777 (N.Y. 1972) ("In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against."). However, "the interest must be of such a character that the destruction of the property will have a direct, and not a mere remote or consequential,

effect upon it. Mere possession or license to use the property is insufficient to support an insurable interest where the insured would experience no direct economic loss by its destruction." *Azzato*, 951 N.Y.S.2d at 733 (internal quotation marks and citations omitted).

Thus, because plaintiffs have not alleged that Mikael has any connection to the property aside from procuring the insurance and paying the insurance premiums, plaintiffs have not adequately alleged that Mikael has an insurable interest in the property. *See, e.g.*, *Silberman v. Royal Ins. Co.*, 584 N.Y.S.2d 625, 625 (App. Div. 1992) (holding that "[t]he plaintiff's payment of the purchase price and insurance premiums on the vehicle [owned by his wife] did not give rise to any equitable or other interest within the meaning of Insurance Law § 3401 that could be insured"); *Azzato*, 951 N.Y.S.2d at 734 (finding wife lacked insurable interest in property although plaintiffs alleged that she contributed to the purchase of her husband's share of the property, and helped maintain and furnish the property where plaintiffs did not allege that she earned any income from or resided in the property, or had any right to do so).

Further, although plaintiffs have argued that defendant should be estopped from asserting a lack of insurable interest because it accepted insurance payments from Mikael Mikaelian, because the insurable interest requirement is statutory, it is not subject to estoppel. *See, e.g.*, *F.A.S.A. Const. Corp. v. Vill. of Monroe*, 789 N.Y.S.2d 175, 177 (App. Div. 2005) ("[E]quitable estoppel cannot be invoked to relieve a party from the mandatory operation of a statute." (internal quotation marks and citation omitted)); *Notaro v. Power Auth. of State of New York*, 840 N.Y.S.2d 683, 684 (App. Div. 2007) (same); *Kiselgof v. New York State Div. of Hous. & Cmty. Renewal*, 803 N.Y.S.2d 166, 168 (App. Div. 2005) (same).

Thus, because Mikael Mikaelian lacked an insurable interest in the Property, he cannot pursue a claim for breach of contract based on the Policy.

Accordingly, because neither Harry nor Mikael Mikaelian can properly bring a breach of contract claim based on the Policy, defendant's motion to dismiss plaintiffs' breach of contract claim is granted.[2,3]

2. Bad Faith[4]

Plaintiffs argue that defendant failed to investigate their claims in good faith by failing to properly investigate their claim and then failing to provide plaintiffs with full

---

[2] Because the Court finds that plaintiffs' breach of contract claim must be dismissed because Harry Mikaelian is not covered by the Policy and Mikael Mikaelian does not have an insurable interest in the Premises, it need not, and does not, reach defendant's alternate argument that the breach of contract claim should be dismissed because the Policy does not cover loss caused by mold or seepage/leakage of water occurring over an extended period.

[3] Plaintiffs also seek a declaratory judgment providing that the terms of the Policy provide full insurance coverage for their damages and a "judgment against Defendant declaring that Plaintiffs are covered for the within loss, *in toto*" (Compl. ¶¶ 62-63), as well as specific performance of the Policy (Compl. ¶¶ 67-68).

However, because Harry Mikaelian is not covered by the Policy and Mikael Mikaelian does not have an insurable interest in the Premises, a declaratory judgment or specific performance requiring the Policy to be enforced would be inappropriate. Thus, plaintiffs' causes of action for a declaratory judgment and specific performance are also dismissed.

[4] Because plaintiffs' remaining claims regarding bad faith, fraudulent investigation, and negligent misrepresentation are all based upon the Policy, and given the Court's ruling that neither plaintiff has a valid claim under the Policy, the remaining claims necessarily fail as a matter of law. In any event, as set forth below, those claims are also dismissed on alternative grounds.

coverage for the claim. Defendant has moved to dismiss, arguing that plaintiffs' bad faith claim is not cognizable under New York law.

New York law does not recognize an independent claim for bad faith based upon an insurer's denial of liability coverage. *See, e.g.*, *Cont'l Cas. Co. v. Nationwide Indem. Co.*, 792 N.Y.S.2d 434, 435 (App. Div. 2005) ("[T]here is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy."); *Royal Indem. Co. v. Salomon Smith Barney, Inc.*, 764 N.Y.S.2d 187, 188 (App. Div. 2003) ("Allegations that an insurer had no good faith basis for denying coverage are redundant to a cause of action for breach of contract based on the denial of coverage, and do not give rise to an independent tort cause of action, regardless of the insertion of tort language into the pleading."); *Paterra v. Nationwide Mut. Fire Ins. Co.*, 831 N.Y.S.2d 468, 470 (App. Div. 2007) ("The plaintiffs' claim predicated on a breach of the implied covenant of good faith is duplicative of the breach of contract claim. Since there is no separate tort for bad faith refusal to comply with an insurance contract, this claim should have been dismissed."). Thus, because plaintiffs' bad faith claim is premised on the notion that defendant acted in bad faith in denying coverage, which is not a cognizable claim under New York law, defendant's motion to dismiss plaintiffs' bad faith claim is granted.[5]

3. Fraudulent Investigation

Plaintiffs' fraudulent investigation claim is very similar to their claim for bad faith. In particular, plaintiffs allege that defendant engaged in fraud by failing to properly investigate their Claim and then "unreasonably and knowingly deny[ing] the Claim with a false basis for doing so." (Compl. ¶ 49.) Plaintiffs further argue in their opposition that defendant "stated that no remediation was necessary, but they knew this to be false as they had been provided with proof that significant water damage and mold did in fact exist in the Property," namely, the Leighton report. (Pls.' Opp'n at 10.) Defendant has moved to dismiss plaintiffs' fraudulent investigation claim, arguing that plaintiffs' have failed to adequately allege the elements of a fraud claim.

"To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (App. Div. 2003). Fraud may also be "predicated on acts of concealment where the defendant had a duty to disclose material information." *Id.*

Although plaintiffs argue that they relied on defendant's representation that Liberty was fully investigating the claim (Pls.' Opp'n at 10), such an argument belies their assertions in their Complaint that, upon receiving H2M's inspection report, plaintiffs "were concerned that Defendant would not provide coverage for the necessary mold remediation under the Policy, so Plaintiff Harry emailed Ruiz to request a follow up inspection by H2M" (Compl. ¶ 18) and later

---

[5] The Court notes that the cases plaintiffs cite in support of their argument that their bad faith claim is cognizable are inapplicable because all involve instances where an insurer has refused to settle a claim on behalf of its insured, as opposed a situation where an insurer has denied coverage or improperly investigated a claim under an insurance policy. (*See* Pls.' Opp'n at 8-9 (citing *Smith v. Gen. Accident Ins. Co.*, 697 N.E.2d 168, 170-72 (N.Y. 1998); *Commerce & Indus. Ins. Co. v. N. Shore Towers Mgmt. Inc.*, 162 Misc.2d 778 (N.Y. City Civ. Ct. 1994); *Reifenstein v. Allstate Ins. Co.*, 461 N.Y.S.2d 104, 106 (App. Div. 1983)).)

"demanded a second inspection by Defendant on the grounds that H2M's inspection was inaccurate as a result of Defendant's failure to provide a complete lab report from Leighton Associates." (Compl. ¶ 22.) Further, plaintiffs allege that, on August 17, 2015, Harry Mikaelian emailed defendant to inform Liberty that after H2M's follow-up inspection was completed, he would commence mold remediation, and then, on or before August 24, 2015, hired Bayside to perform the mold remediation. (Compl. ¶¶ 23, 25.) Thus, plaintiffs' own Complaint clearly indicates that they did not rely upon defendant's representation regarding the need for mold remediation, but rather, repeatedly questioned the defendant's position regarding the need for mold remediation and, eventually, hired their own contractor to conduct the mold remediation based on a concern that defendant was not acting quickly enough to arrange an additional inspection and remediation. *See, e.g.*, *Dyke v. Peck*, 719 N.Y.S.2d 391, 394 (App. Div. 2001) (finding it was clear that plaintiff did not rely on defendants' representations regarding condition of floor where two days after statement, he wrote to the real estate agent wanting immediate answer to his question concerning what was under the rug in that area); *Ross v. Gidwani*, 850 N.Y.S.2d 567, 568 (App. Div. 2008) (finding plaintiff did not rely on alleged misrepresentation regarding content of autopsy authorization where she made further inquiry of hospital and autopsy was conducted as she requested). Therefore, because plaintiffs have not adequately alleged the element of reliance that is necessary to support a plausible fraud claim, defendant's motion to dismiss plaintiffs' claim for fraudulent investigation is granted.

4. Negligent Misrepresentation

Plaintiffs allege that defendant acted negligently by failing to respond to their requests in a timely manner, failing to properly adjust the case in a manner consistent with insurance industry standards, failing to provide a reasonable basis for denying payment on the Claim, and failing to meet its duty to engage in good faith and fair dealings with plaintiffs. (Compl. ¶¶ 54-57.) Plaintiffs further claim in their opposition that "the Defendant chose to rely on a report from an architect and engineering company when denying coverage, despite knowing such information was false because they had in their possession a lab report from an environmental and safety consultant indicating water damage and mold." (Pls.' Opp'n at 11.) Defendant moves to dismiss, arguing that plaintiffs have failed to allege any necessary elements of a negligent misrepresentation claim.

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000); *see also Fresh Direct, LLC v. Blue Martini Software, Inc.*, 776 N.Y.S.2d 301, 302 (App. Div. 2004).

As with plaintiffs' fraud claim, their negligent misrepresentation claim similarly fails because plaintiffs' Complaint clearly indicates that they did not rely on any information supplied by defendant, but rather demanded a second inspection and, ultimately, hired their own contractor to perform the mold remediation. (*See supra* at III.3.) As such, plaintiffs cannot claim that

9

they reasonably relied to their detriment on any statements by defendant regarding the need for mold remediation. *See, e.g.*, *Fane v. Zimmer, Inc.*, 927 F.2d 124, 130 (2d Cir. 1991) (finding negligent misrepresentation claim was properly dismissed where there was no evidence that the plaintiff or her doctor relied on defendant's representation, but rather, doctor "expressly stated that he did not rely on [defendant's] representations or promotional material" and plaintiff was unaware of representations); *Automatic Findings, Inc. v. Miller*, 648 N.Y.S.2d 90, 91 (App. Div. 1996) ("[S]ince the plaintiffs did not rely to their detriment on the reports and actions of defendants in investigating the claim, they may not predicate liability on negligent misrepresentation."); *Antonious v. Muhammad*, 673 N.Y.S.2d 158, 159 (App. Div. 1998) ("To the extent that the plaintiffs are alleging negligent misrepresentation, the record establishes that the plaintiffs did not rely to their detriment on any information provided by the respondents. Thus, that cause of action must fail.") Therefore, because plaintiffs have not adequately alleged the requisite elements of a negligent misrepresentation claim, defendant's motion to dismiss plaintiffs' negligent misrepresentation claim is granted.[6]

## IV. LEAVE TO AMEND

Having concluded that plaintiffs have failed to state a plausible claim, the Court has considered whether they should be afforded an opportunity to amend their Complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (finding that leave to amend may be denied based upon the "futility of amendment"). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle [it] to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

As noted above, the Complaint fails to allege a plausible breach of contract, bad faith, fraud, or negligent misrepresentation claim. Moreover, based upon the allegations in the Complaint, it appears that any attempt to re-plead would be futile. For example, there appear to be no additional allegations which could be added (in good faith) to demonstrate that Mikael Mikaelian has an insurable interest in the Premises. In addition, plaintiffs did not request leave to re-plead in their opposition, nor did they suggest at oral argument that there were any additional allegations that could be asserted to support a plausible claim. However, in an abundance of caution, if plaintiffs believe that they could remedy the defects identified by the Court with respect to any of these claims (or if they believe that there is any other basis for amendment), they may file a motion to amend within thirty (30) days of this Memorandum and Order. If no such motion is filed, the Court will close case.

---

[6] Defendant has also argued that plaintiffs are not entitled to recover attorneys' fees, punitive damages, or consequential damages. Because defendant's motion to dismiss is granted and plaintiffs' claims are dismissed, plaintiffs are clearly not entitled to recover attorneys' fees, punitive damages, or consequential damages as plaintiffs are not the prevailing party in this action.

## V. Conclusion

For the foregoing reasons, the Court grants defendant's motion to dismiss in its entirety. However, plaintiffs may seek leave of the Court to amend their Complaint within thirty (30) days from the date of this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   September 8, 2016
         Central Islip, NY

\*\*\*

Plaintiffs are represented by Peter Hatzipetros, Anastasi Pardalis, and Joseph D. Nohavicka of Paradalis & Nohavicka, LLP, 35-10 Broadway, Suite 201, Astoria, New York 11106. Defendant is represented by Marshall T. Potashner and Bension D. DeFunis of Jaffe & Asher LLP, 600 Third Avenue, 9th Floor, New York, New York 10016.